Robert F. Gehrke, 006348
301 East Bethany Home Road  Suite A-222
Phoenix, Arizona 85012
Phone: 602-230-9001
Facsimile: 602-277-4705
gehrkelaw@cox.net
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Goss, | Case No: |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| United States of America, Tuba City Regional Health Care Corporation, an Arizona corporation and self-governed under the Indian Self-Determination and Education Assistance Act  Lynette Bonar, in her individual capacity acting under color of law, and Jane/John Does, all acting in her or his individual capacity under color of law, | **(Jury demand when applicable)** |
| Defendants. | |

Plaintiff Keith Goss, by and through undersigned counsel, hereby files his Complaint as follows:

## PARTIES

1. Keith Goss, a now married man, single at the time of the events set forth herein, was at all relevant times a resident of Coconino County and now a resident of Maricopa County, Arizona.

2.      Defendant United States of America is responsible under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, for the negligent acts by the employees of Defendant Tuba City Regional Health Care Corporation if said entity falls under the FTCA.

3.      Defendant Tuba City Regional Health Care Corporation ("TCRHCC") is an entity that is registered as and acted at all relevant times as an Arizona corporation. It operated under self- governed under P.L. 93–638, Approved January 4, 1975 (88 Stat. 2203), the Indian Self-Determination and Education Assistance Act.  It became a private corporation in September 2002 when it became a 638 contract care facility giving complete administrative and fiscal control to local hospital governing board.  Under federal law, there is no immunity and the hospital can be liable for the wrongful actions as set forth herein.

4.      Defendant Lynette Bonar is an individual who worked for Tuba City Regional Health Care Center.  She was the supervisor of Plaintiff as well as another individual named Jayson Watabe. She is liable for any intentional acts as well as violations of state and federal law as set forth herein. In certain instances, she was acting under the color of law and in her individual capacity.

5.      Plaintiff filed a claim under the Federal Tort Claim Act against Defendant TCRHCC and the claim was denied. Defendant United States generally assumes

responsibility under said federal law for and is responsible for the negligent acts of its employees that were acting in the scope of their employment.

6. Jane/John Does are unknown individuals who were working for Defendant TCRHCC and acting in their individual capacity under the color of law.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2671-2680, 28 U.S.C. § 1346(b)(1), 42 U.S.C. §1983, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), U.S. Constitutional law, and Arizona state law as the actions occurred through the conduct of non-Navajo Nation members and as against Plaintiff, a non Navajo Nation Member.

8. A jury trial is demanded where permitted by law.

## GENERAL ALLEGATIONS

9. Keith Goss is a podiatrist who worked for Tuba City Regional Health Care Corporation.

10. Defendant Lynette Bonar and other individuals were employees at TCRHCC. However, at the time of these allegations, with the exception of Jayson Watabe relating to illegal recording, Defendant Bonar and others were acting in their individual capacity under the color of law.

3

11.     Dr. Keith Goss was hired to work as a podiatrist at the TCRHCC. TCRHCC was self- governed under P.L. 93–638, Approved January 4, 1975 (88 Stat. 2203), the Indian Self-Determination and Education Assistance Act.  It became a private corporation in September 2002 when it became a 638 contract care facility giving complete administrative and fiscal control to local hospital governing board which was supposed to provide the highest level of self-determination where health care is concerned for its own native population.

12.     However, what transpired was a culture of largely non-Indian employees paying themselves large amounts of money, neglecting the care of tribal members, contracting with outside providers and retaliating against Plaintiff for reporting what was happening.

13.     Dr. Goss believed that the care from TCRHCC overall that was given to the tribal members was inadequate and he made lawful attempts to bring these problems to the tribal leaders.

14.     As a result of his efforts, he was met with retaliation and a constant hostile working environment ending with an "investigation" that appeared to have a predetermined outcome.

15.     Dr. Goss originally had a contract and management refused to modify it to be consistent with other employees. Dr. Goss worked countless overtime for the

tribal members to provide quality care. Instead of being rewarded, others were paid overtime for doing minimal work and providing lower quality care.

16. Dr. Goss had knowledge of pay-offs between employees and third parties to send contracts their way, to do things contrary to the best interests of the patients simply to bring in more money, and the hospital's funds declined as the management and their chosen workers profited.

17. After reports surfaced that the problems of care and corruption within the hospital, Dr. Goss was placed on leave despite no prior disciplinary actions. He was told he wasn't under investigation yet it was clear that was precisely what was transpiring based on the witnesses sought, unlawful recordings made and allegations made to the public.

18. TCRHCC hired an outside attorney to "investigate" claims against the "hospital" yet it was Plaintiff who was placed on leave. The attorney wanted to interview Dr. Goss under the guise that the investigation was about the hospital yet it was clear that was not the underlying purpose as the hospital stated in an August 6, 2017 letter- that the attorney was conducting an independent review related to complaints against the hospital and "statements made by Dr. Goss RELATIVE TO HIS EMPLOYMENT and conditions at the hospital."

19. The attorney, Scott Bennett also advised that there were "threats" by Dr. Goss which clearly showed they were going to his employment matter.

20. The hospital's claim that the administrative leave was "non-adverse and non-disciplinary" was not true given the other statements made.

21. Dr. Goss asserts that he was driven out of his job due to the TCRHCC's negligent supervision over the employees as well as the negligence of the individuals who used their positions to retaliate against him for reporting the corruption and negligence within the hospital.

22. Dr. Goss was forced to resign due to this false administrative leave and the claims that the investigation was into the hospital yet clearly it was an attempt to establish his whistleblowing efforts. He has lost numerous opportunities due to this constructive discharge.

23. At the time of his employment, Dr. Goss was in a relationship with a member of the Navajo Nation. They have since married.

24. Dr. Goss regularly stood up for the rights of the members of the Navajo Nation and his free speech to address the concerns about their treatment was violated.

25. Plaintiff suffered damages through the emotional distress, loss of reputation and loss of his earning capacity as well as the actions of the Defendants contributed to the forced resignation given the hostile environment and false accusations.

COUNT ONE
NEGLIGENCE/NEGLIGENT SUPERVISION
(USA and/or Tuba City Regional Hospital)

26. Plaintiff incorporates paragraphs 1 through 25 as if full set forth herein.

27. Defendants oversaw the employment of Plaintiff in his role as a medical provider at TCRHCC and owed him a duty to make certain other employees did not treat him wrongfully.

28. Defendant Bonar and others acted to spread false information about Plaintiff, required him to work lengthy hours, retaliated against him when he complained about what he believed were violations of the law, and placed him on leave resulting in a constructive discharge.

29. Defendants USA and/or TCRHCC were negligent on that they breached the duty to Plaintiff to treat him fairly by failing to properly oversee the conduct of Bonar and others, a breach which caused damage to Plaintiff.

COUNT TWO

CONSTRUCTIVE DISCHARGE

(Defendant Tuba City Regional Hospital)

30.     Plaintiff incorporates paragraphs 1 through 29 as if full set forth herein.

31.     Plaintiff was hired as a medical provider and given an employment contract, the terms of which were changed throughout his employment.

32.     Arizona law states all employment relationships are contractual and TCRHCC is not immune from employment laws due to the fact that it employed a significant number of non-tribal members, had contracts with numerous non-tribal entities, the evidence will show the actions were for profits of individuals and not mainly for the benefit of the tribal members and TCRHCC was registered as an Arizona corporation. *See Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1129 (11th Cir.1999); Coeur d'Alene; *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 181 (2d Cir.1996) *Occupational Safety & Health Review Comm'n,* 935 F.2d at 184 (tribal employer is subject to OSHA interstate commerce"); *Donovan v. Coeur d'Alene Tribal Farms,* 751 F.2d 1113, 1115 (9th Cir. 1985).

33.     Defendant TCRHCC in part through Defendant Bonar, made the work conditions such that Plaintiff was forced to quit his employment. These actions included making false allegations about Plaintiff internally and externally, having

an employee illegally record a private conversation, placing Plaintiff on leave without naming any reasons and under the guise that it was an investigation into the hospital, trying to force him to participate in interviews which were designed not to gather information but make accusations, and retaliation for reporting illegal conduct. Under A.R.S. §23-1502, the conduct caused a reasonable employee to feel compelled to resign.

34. Plaintiff was damaged by these actions.

## COUNT THREE

Intentional Infliction of Emotional Distress

(Lynette Bonar and Tuba City Regional Hospital)

35. Plaintiff incorporates paragraphs 1 through 34 as if full set forth herein.

36. The conduct of Defendants Bonar and TCRHCC conduct was extreme and outrageous which included but was not limited to making false allegations about Plaintiff internally and externally, having an employee illegally record a private conversation, placing Plaintiff on leave without naming any reasons and under the guise that it was an investigation into the hospital, trying to force him to participate in interviews which were designed not to gather information but make accusations, and retaliation for reporting illegal conduct.

37. The Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct, and their actions caused the plaintiff to suffer severe emotional distress

38. Plaintiff was damaged by the conduct. Defendant Bonar would not allow Plaintiff hire surgeons into open positions in his department, stating there was no money for it, even though other hiring occurring within the hospital. Plaintiff oversaw the busiest surgical department with 7,000 clinic patients that year and performed over 600 surgeries, while on 24/7 call for the year without any overtime pay or compensatory time. The three other surgical departments had five to six doctors and multiple PA's and NP's, and received overtime pay and compensatory time

## COUNT FOIR
### Breach of Covenant of Good Faith and Fair dealing

39. Plaintiff incorporates paragraphs 1 through 33 as if full set forth herein.

40. Plaintiff's employment contract contains a covenant of good faith and fair dealing.

41. When the Defendants failed to give him raises as they did others, began spreading false information about him, retaliated against him and placed him on leave, they violated the good faith and fair dealing provision of his contract.

42. Plaintiff was damaged by said conduct. Defendant Bonar would not allow Plaintiff hire surgeons into open positions in his department, stating there was no money for it, even though other hiring occurring within the hospital.  Plaintiff oversaw the busiest surgical department with 7,000 clinic patients that year and performed over 600 surgeries, while on 24/7 call for the year without any overtime pay or compensatory time.  The three other surgical departments had five to six doctors and multiple PA's and NP's, and received overtime pay and compensatory time.

## COUNT FIVE
### Bivens claim
### (Lynette Bonar)

43. Plaintiff incorporates paragraphs 1 through 37 as if full set forth herein.

44. Jayson Watabe was an employee of Defendant Bonar and acted under her direction and supervision. Upon information and belief, he convinced Plaintiff to engage in a discussion about the problems Plaintiff perceived at the hospital and taped that phone call.

45. Defendant Bonar became aware of this action before during or after the illegal wiretap and used that information to initiate the disciplinary conduct against Plaintiff.

46. Defendant's conduct was a violation of not only federal wiretap law,

18 U.S. Code § 2511, but also of Defendant's First Amendment right to free speech when he thought he was discussing problems with the facility privately with another employee, even going so far as to go into a closet so that it would not be public, as well as his Fourth Amendment Right to Privacy.

47. Defendant Bonar was acting under the color of law as an employee of TCRHCC at the time of the conduct that violated Plaintiff's constitutional rights. If Defendant Bonar is considered a "federal employee" then this conduct is prohibited under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

## COUNT SIX
Negligent Supervision as to Jayson Watabe's actions (All)

48. Plaintiff incorporates paragraphs 1 through 47 as if full set forth herein.

49. Defendant Watabe acquired the content of Plaintiff's communications when he recorded a conversation with Plaintiff when Plaintiff had every reason to believe the conversation was private given that they went into a closet to talk thus making the expectation reasonable.

50. Jayson Watabe violated 18 U.S. Code § 2511 when he conducted the illegal wiretap and the Defendants were negligent in the supervision. The USA is liable if

Defendants Bonar and TCRHCC are considered federal actors otherwise Bonar and TCRHCC are liable.

51. This interception was used by Defendants Bonar and TCRHCC in the disciplinary action when they knew it was illegal.

52. The oral interception damaged Plaintiff when it was used in an administrative proceeding by Bonar and TCRHCC, an entity of the federal government for purposes of the self determination laws, or as private actors.

## COUNT SEVEN
### Violation of Whistle Blowing Laws (state)

53. Plaintiff incorporates paragraphs 1 through 52 as if full set forth herein.

54 Defendants TCRHCC and Bonar acted intentionally in retaliating against Plaintiff for reporting of the illegal activities at TCRHCC to the Navajo Nation through the employment investigation and constructive discharge in violation of A.R.S. § 23-1501 and § 41-1464.

55. Plaintiff was damaged by this conduct.

## COUNT EIGHT
### Violation of Whistle Blowing Laws (federal)

56. Plaintiff incorporates paragraphs 1 through 55 as if full set forth herein.

57. A "protected disclosure" under Federal whistleblower protection law includes any disclosure of information that an employee, former employee, or applicant for employment reasonably believes evidences a violation of any law, rule, or regulation; gross mismanagement; gross waste of funds; abuse of authority; or substantial and specific danger to public health or safety.

58. Plaintiff reported the safety, mismanagement and violations of rights for the patients to the Navajo Nation management.

59. He was retaliated against by Defendants TCRHCC and Bonar in violation of the Whistleblower Protection Act and related acts.

60. Plaintiff was damaged by this violation.

## PUNITIVE DAMAGES

## (Bonar and TCRHCC)

61. Plaintiff incorporates paragraphs 1 through 60 as if full set forth herein.

62. The intentional actions of the Defendants showed an evil mind in that they were targeting Plaintiff through a false investigation, spreading false information in the community to promote the personal agendas, and retaliating against him for reporting the illegal conduct.

63. As further evidence of this conduct, reports were recently made by someone at TCRHCC to law enforcement falsely claiming that Plaintiff was "threatening someone."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. A trial by jury where applicable;

B. Lost and reduced wages;

C. Future lost earnings/loss of reputation;

D. Emotional distress;

E. For any and all general damages sustained by Plaintiff for the harm caused to his reputation, mental health, physical health, financial situation, past and future, and loss of ability to pursue his passions with the Navajo Nation;

F. For punitive and exemplary damages sustained by Plaintiff to the extent permitted by law as a result of the defendants' intentional acts to harm Plaintiff;

G. Costs and interest as provided by law;

H. For attorneys' fees under 28 UCS § 2678 and any applicable law; and

I. For such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED this 5 day of April, 2018.

By: _____
ROBERT F. GEHRKE
Attorney for Plaintiff

VERIFICATION

I, Keith Goss, being first duly sworn, upon oath, deposes and says:

I am the Plaintiff in the above-captioned cause and I have read the Verified Complaint and I know the contents thereof; that the same is true to the best of my personal knowledge except as to those statements made therein upon information and belief and as to those, I believe them to be true.

_____
KEITH GOSS

STATE OF ARIZONA      )
                      )ss
COUNTY OF MARICOPA    )

SUBSCRIBED AND SWORN to before me this 5 day of April, 2018, by KEITH GOSS.

_____
Notary Public

ROBERT F. GEHRKE
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
October 14, 2018

Stamp