**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Goss, | No. CV-18-08077-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Plaintiff Keith Goss initially alleged eight claims related to his employment and resignation from Tuba City Regional Health Care Corporation ("THC"). Doc. 1. The parties stipulated that the United States is the sole defendant for Counts 1, 2, 3, and 6 pursuant to the Federal Tort Claims Act ("FTCA"). Docs. 24, ¶ 3, 34 at 3.[1] The Court dismissed the remaining claims. Doc. 34 at 16-17. Plaintiff has filed a motion in limine to exclude key evidence, and Defendant moves to dismiss and for summary judgment on the remaining counts in the case. Docs. 75, 76. No party requests oral argument. The Court will deny Plaintiff's motion in limine and grant Defendant's motion.

**I.  Background.**

The following facts are undisputed unless otherwise noted. Plaintiff worked as a podiatrist for THC from July 1, 2008 until he resigned on September 20, 2017. Docs. 1

---

[1] Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

at 4, 17-1 at 3. During his employment, Plaintiff complained about inappropriate expenditures of hospital money and inadequate medical care offered to tribal members. Doc. 1 ¶¶ 12-14. Plaintiff spoke to a reporter at the Navajo Times newspaper and with members of the Navajo Nation government about his concerns. Doc. 77 ¶ 12. Plaintiff also had significant disagreements with THC's Chief Executive Officer ("CEO"), Lynette Bonar, and believed that other physicians unfairly received overtime and compensation benefits he did not. *Id.* ¶¶ 8-9; Doc. 80 ¶ 36. Dr. John Wright, head anesthesiologist, shared Plaintiff's concerns. Doc. 80 ¶¶ 40-42. Other employees accused Plaintiff of various misdeeds, including prescribing excessive antibiotics, performing unnecessary surgeries, receiving financial kickbacks from another medical center, and operating outside his privileges. Doc. 77 ¶¶ 5-6. Plaintiff disputes these accusations. *Id.* ¶ 7.

THC has a number of policies regarding workplace conduct, including a violence-free workplace policy, which provides that an offending employee "may be placed on Administrative Leave with pay during the course of [an] investigation." Docs. 77 ¶ 13, 77-2 at 258. Behavior that violates the policy includes intimidation, verbal abuse, offensive jokes or comments regarding violence, actions causing fear, or "any other act, which in management's opinion, is inappropriate." Docs. 77 ¶ 14, 77-2 at 257. THC also, in its discretion, "may elect not to proceed through progressive discipline but may immediately initiate a more serious discipline, including termination . . . even if the conduct is a first violation." Docs. 77 ¶ 15, 77-2 at 262.

While on duty in July 2017, Plaintiff met with a THC physician's assistant, Jason Watabe, who secretly recorded their conversation. Doc. 77 ¶ 17-18. Plaintiff used highly vulgar language aimed at Bonar and other THC employees. Doc. 77 ¶ 21. Plaintiff stated that he was going to cut Bonar's head off, that he was from a "mafia family," and that "[Bonar is] going to see everything I ever learned from my family." *Id.* Defendant interpreted these words as specific threats against Bonar. *Id.* Plaintiff disputes Defendant's characterization of the exchange as threatening. Doc. 80 ¶ 21

Watabe informed Bonar of their conversation and turned the recording over to THC's human resources department. Doc. 77 ¶ 26. On July 20, 2017, THC placed Plaintiff on administrative leave and hired an attorney to investigate Plaintiff and the statements he made to Watabe. *Id.* ¶¶ 27, 29. Plaintiff was never terminated and continued to receive full pay and benefits while on administrative leave. *Id.* ¶ 28. Plaintiff subsequently resigned and now contends that THC placed him on administrative leave in retaliation for his complaints about THC. *Id.* ¶ 31.

## II. Plaintiff's Motion in Limine.

Plaintiff moves to exclude the contents of Watabe's recording of their conversation, claiming that the conversation was private and that Watabe violated the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* ("the Act"). Doc. 75. The Act "is designed to prohibit 'all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in investigation of specified types of major crimes.'" *Greenfield v. Kootenai Cty.*, 752 F.2d 1387, 1388 (9th Cir. 1985) (quoting S. Rep. No. 1097, 90th Cong., 2d Sess.). The Act makes it unlawful for a person to "intentionally intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511.[2]

But the Act also provides that:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id.* § 2511(2)(d).

---

[2] The Act defines the term "intercept" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

The Supreme Court has interpreted the Act's phrase "under 'color' of law" to mean "under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). A public employee's actions are under pretense of law only if they are "in some way 'related to the performance of his official duties.'" *Huffman v. Cty. of L.A.*, 147 F.3d 1054, 1058 (9th Cir. 1998) (citations omitted). A public employee who is "pursuing his own goals and [i]s not in any way subject to control by [his public employer]" does not act under pretense of law unless he "purport[s] or pretend[s]" to do so. *Id.* (citations and quotations omitted).

Watabe testified that nobody told him to record his conversation with Plaintiff. Doc. 77-2 at 127. He decided to make the recording out of concern for the hospital and its employees arising from two conversation Watabe had with Plaintiff earlier the same day. *Id.* at 128. Watabe described the earlier conversations as outlandish, extreme, and threatening. *Id.* When Plaintiff called to talk with Watabe a third time, Watabe decided to record the conversation. *Id.* The conversation occurred in a small room at the hospital, and Watabe recorded it on a hospital iPhone and later uploaded the recording to his personal account. *Id.* at 130. Watabe testified that he could not recall ever recording another conversation, and that he was not aware of any other THC employee ever recording conversations. *Id.* Bonar testified that she was not aware of employees recording conversations and that she did not know of anyone telling Watabe to record his conversation with Plaintiff. *Id.* at 100.

Plaintiff appears to make three arguments in support of his claim that the recording violated the Act and therefore should be excluded from evidence.

First, Plaintiff asserts that Watabe was a federal employee who met with Plaintiff on federal property. Doc. 75 at 1. As noted above, however, a public employee's actions occur are under "pretense of law" only if they are "in some way 'related to the performance of his official duties.'" *Huffman*, 147 F.3d at 1058. Plaintiff presents no evidence that the recording was somehow related to Watabe's duties as a physician's assistant.

Second, Plaintiff suggests that Watabe recorded the conversation at the behest of his supervisor, Dr. Kelley. But Plaintiff's evidence does not support this conclusion.

Plaintiff cites testimony by Dr. Wright that he heard Dr. Kelley state that the hospital had gotten rid of a "big evil" when Plaintiff departed. Doc. 75-1 at 2. And he cites evidence that Watabe, after turning the recording over the human resources, told Dr. Kelley about the recording. Doc. 75-1 at 14. But Plaintiff provides no evidence that Dr. Kelley's views about Plaintiff or his departure were ever communicated to Watabe, and no evidence that Dr. Kelley in any way directed or asked Watabe to make the recording. Watabe's testimony about why he made the recording is unrebutted.

Third, Plaintiff suggests that Watabe committed the tort of invasion of privacy or violated Plaintiff's Fourth Amendment rights when he recorded the conversation. The Court does not agree.

As the Ninth Circuit has explained, "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception – its intended use – was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted). Plaintiff presents no evidence that Watabe intended to use the recording to commit the tort of invasion of privacy. The only evidence of Watabe's intention – his own testimony – shows that he made the recording because of concern for the hospital and its employees. Furthermore, although Arizona recognizes the tort of false light invasion of privacy, that tort "protects against the conduct of knowingly or recklessly publishing false information or innuendo that a reasonable person would find highly offensive." *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 786, 788 (1989). The publicity must involve a "major misrepresentation of the plaintiff's character, history or beliefs[.]" *Id.* at 787. Plaintiff has presented no evidence that Watabe intended to portray Plaintiff in a false light, or that publication of the recording would have done so.[3]

---

[3] Plaintiff does not specify the form of invasion of privacy he asserts. The Restatement recognizes several. *See* Restatement (Second) of Torts § 652A *et seq.* (1977). The only possible form besides false light would be instruction upon seclusion, but this tort requires that a person "intentionally intrude[], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns[.]" Restatement § 652B. Plaintiff makes no argument that Watabe intruded on his seclusion or private affairs. To the contrary, Plaintiff himself voluntarily chose to make the statements to Watabe that were recorded.

- 5 -

Nor did the recording violate Plaintiff's Fourth Amendment rights. There is no constitutionally protected expectation of privacy in information that a person voluntarily reveals to another. If one of the parties to the conversation consents to the recording, the Fourth Amendment is not violated. *See United States v. White*, 401 U.S. 745, 749, 752 (1971) (citation omitted); *see United States v. Puchi*, 441 F.2d 697, 700 (9th Cir. 1971).

In short, Plaintiff has presented no evidence that Watabe made the recording under pretense of law, at the direction of THC or any of its employees, or with the intent to commit a crime or tort. The undisputed evidence shows that Watabe was "pursuing his own goals" in documenting Plaintiff's words – words he construed as threats to the hospital and its employees. *Huffman*, 147 F.3d at 1058. Because Plaintiff has not shown that Watabe's recording violated the Act, the Court will deny Plaintiff's motion in limine.

**III. Legal Standards.**

**A. Motion to Dismiss.**

A motion to dismiss under Rule 12(b)(1) can be either a facial or factual attack on jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff's allegations are not taken as true, the court may look beyond the pleadings, and the plaintiff has the burden of proving jurisdiction. *Id*. The plaintiff must "present affidavits or any other evidence necessary to satisfy its burden[.]" *St. Clair v. City of Chino*, 880 F.2d 199, 201 (9th Cir. 1989).

**B. Summary Judgment.**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence must be viewed in the light most

favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and all justifiable inferences are drawn in that party's favor because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions," *Anderson*, 477 U.S. at 255.

**IV. Discussion.**

Four claims remain in this case: negligence (Count 1), constructive discharge (Count 2), intentional infliction of emotional distress (Count 3), and negligent supervision (Count 6).

**A. Counts 1, 2, and 6.**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA waives the federal government's immunity:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA exempts any claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government[.]" § 2680(a).

Defendant moves to dismiss Counts 1, 2, and 6 on the basis of this "discretionary function" exception. Doc. 76 at 2, 7. Defendant contends that Plaintiff's placement on administrative leave was discretionary, and the Court therefore lacks subject matter jurisdiction. Doc. 76 at 4. Plaintiff argues that Defendant's actions were not discretionary and that its decision to place him on leave did not further public policy. Doc. 79 at 7, 10.[4]

---

[4] Defendant's motion makes a factual attack on jurisdiction. It looks past the allegations of the complaint and asserts that an exception to the FTCA applies and the Court therefore lacks subject matter jurisdiction. In considering this argument, Plaintiff's allegations are not taken as true, the Court may look beyond the pleadings, and Plaintiff has the burden of proving jurisdiction. *See Safe Air*, 373 F.3d at 1039.

The Supreme Court has established a two-part test for determining when the discretionary function exception applies. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). First, courts ask whether the challenged action involved an element of judgment. *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016). This part of the test is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for any employee to follow." *Berkovitz*, 486 U.S. at 536. Second, if there is room for judgment, courts determine whether the judgment is of a kind that the exception was designed to protect. *Id.*

Defendant asserts that the first part of the discretionary function test is satisfied because Plaintiff can identify no policy or regulation specifying how THC should supervise its employees and THC's policies regarding discipline are completely discretionary. Doc. 76 at 5-6. Plaintiff does not address this argument. Rather, Plaintiff appears to argue that the exception does not apply because Watabe acted in bad faith and "violated Plaintiff's constitutional and statutory rights to privacy" in recording their private conversation. Doc. 79 at 7-9. But as discussed above, Plaintiff has not shown that Watabe violated Plaintiff's rights in recording the conversation.[5]

Plaintiff does not dispute that THC's disciplinary policies are discretionary, including decisions to place employees on administrative leave. As THC's policy states:

> *at its sole discretion*, [THC] may elect not to proceed through progressive discipline but *may* immediately initiate a more serious discipline, including termination, as the behavior/offense or repeated violation of policy may require. This *may* include terminating an employee, even if the conduct is a first violation.

Doc. 77-2 at 262 (emphasis added). The policy further states that an offending employee "*may* be placed on Administrative Leave with pay during the course of [an] investigation."

---

[5] Plaintiff's briefing on this issue is particularly muddled. Plaintiff contends that "Defendant confuses the applicability of various legal doctrines" without identifying which doctrines, and he does not explain how Defendant is incorrect. Doc. 79 at 6. Plaintiff also notes that THC was "not doing it through disciplinary procedures but instead, getting [Plaintiff] to confide in Watabe so he could record the private conversation." *Id.* at 7. But Plaintiff does not make clear what he means by "it," or how this argument relates Defendant's decision to place him on administrative leave.

*Id.* at 258 (emphasis added). Employees can be placed on administrative leave for a number of reasons, including "any [] act, which *in management's opinion*, is inappropriate." Docs. 77 ¶ 14, 77-2 at 257 (emphasis added).

Plaintiff does not address these policies, which clearly grant discretion to THC on how to discipline its employees. Aside from arguing that Watabe improperly recorded the conversation, Plaintiff presents no facts or case law to suggest that THC's placement of Plaintiff on administrative leave was not discretionary. And "[e]ven if the decision is an abuse of the discretion granted, the exception will apply." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citations omitted).

Defendant argues that the second part of the discretionary function exception is also satisfied because the hiring, training, and supervision of employees implicate policy considerations and are the types of judgments the exclusion was designed to protect. Doc. 76 at 6. The Court agrees. This Circuit has held that "the decision of whether and how to retain and supervise an employee . . . are the type of discretionary judgments that the [FTCA] exclusion was designed to protect." *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009); *see Vickers v. United States*, 228 F.3d 944, 950-51 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (holding that plaintiff's claims of "negligent and reckless employment, supervision and training of" employees "fall squarely within the discretionary function exception").

Plaintiff's Counts 1, 2, and 6 fall within the discretionary function exception. The Court will dismiss them.

**B.  Constructive Discharge (Count 2).**

Count 2 also fails for a second reason. Under the FTCA, a defendant can be liable only to the extent a private person would be liable in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). Defendant argues that

Arizona does not recognize constructive discharge as a tort. Doc. 76 at 8. The Court agrees.

In *Peterson v. City of Surprise*, 418 P.3d 1020 (Ariz. Ct. App. 2018), a former employee sued the City of Surprise, alleged constructive discharge and breach of contract, and argued that she was compelled to resign because the city failed to protect her from intolerable discriminatory conduct based on her gender and military status. 418 P.3d at 1022. The court of appeals acknowledged that Arizona law allows an employee to claim constructive discharge based on an employer's "outrageous conduct" or failure to remedy "objectively difficult or unpleasant working conditions" that would compel a reasonable employee to resign. *Id.* at 1023; *see* A.R.S. § 23-1502(A). But the Court made clear that "although constructive discharge may transform a resignation into a discharge, by itself, it does not afford an employee a remedy." *Peterson*, 418 P.3d at 1023; *see Wood v. Univ. Phys. Healthcare*, No. CV-13-00063-PHX-JAT, 2013 WL 6170604, at *4 (D. Ariz. Nov. 21, 2013). Thus "[t]o prevail on a claim for constructive discharge, an employee also must prove a common-law or statutory claim for wrongful termination." *Peterson*, 418 P.3d at 1023.

The Court has indicated that one possible claim would be breach of Plaintiff's employment contract under A.R.S. § 23-1501(A)(3)(a). *See* Doc. 34 at 4 n.2. But the remedies under this section are limited to the remedies for a breach of contract. This is clearly not a tort within the FTCA. *See* 28 U.S.C. § 2680(h); 25 C.F.R. § 900.183(a), (b).

Plaintiff argues that "Defendant accepted responsibility under the [FTCA] [and] thus cannot now claim it is not a tort." Doc. 79 at 11. Plaintiff presents no legal support for this contention. He has the burden of showing that he has asserted a viable tort claim.

Plaintiff also argues that A.R.S. § 23-1501 provides that an employee "shall have the right to bring a tort claim for wrongful termination in violation of the public policy set forth in the statute." Doc. 79 at 11 (quoting § 23-1501(A)(3)(b)). But this section provides that "[a]n employee has a claim against an employer for termination of employment" if "[t]he employer has terminated the employment relationship of [the] employee in violation

of a statute of this state." A.R.S. § 23-1501(A)(3)(b). Plaintiff does not identify a state statute that was violated by his alleged constructive discharge. Section (A)(3)(b) further provides that "[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy set forth in or arising out of the statute[.]" *Id.* Plaintiff does not identify a statutory remedy he seeks to obtain. The final sentence of the section – which Plaintiff quotes – states that "[i]f the statute does not provide a remedy to an employee for the violation of the statute, the employee shall have the right to bring a tort claim for wrongful termination in violation of the public policy set forth in the statute." *Id.* But such a tort claim must still be based on violation of a state statute, and Plaintiff identifies none. Nor does he show that the violated statute does not provide a remedy, a showing required for him to assert a tort claim. *See* Doc. 79 at 11-12.

Plaintiff argues only that he "was targeted by Watabe who then used the tape to help his boss obtain the goal of getting rid of the 'big evil,'" and that "after sitting on the tape which the Defendant claims was a threat and basis for discipline, Plaintiff was given inconsistent and troubling letters from Tuba City and then from their attorney about the reasons for the investigation." Doc. 79 at 11. But these arguments do not overcome the fact that Arizona has no tort of constructive discharge (the claim asserted in Count 2) or that Plaintiff has failed to identify a statutory violation for which he can assert a tort claim under A.R.S. § 23-1501(A)(3)(b). This additional reason supports summary judgment on Count 2.

**C.    Intentional Infliction of Emotional Distress (Count 3).**

The tort of intentional infliction of emotional distress requires proof of three elements: (1) the conduct must be "extreme and outrageous"; (2) the defendant must intend to cause emotional distress or recklessly disregard that such distress will, with a near certainty, occur from his conduct; and (3) severe emotional distress must occur as a result of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (2005) (citing *Ford v. Revlon*, 734 P.2d 580, 585 (1987)). To satisfy the "extreme and outrageous"

element, a defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995).

Plaintiff alleges that THC employees intentionally inflicted emotional distress on him by "making false allegations" about him, "having [Watabe] illegally record a private conversation," and placing him on administrative leave "without naming any reasons and under the guise that it was an investigation into the hospital." Doc. 1 at 9. Defendant argues that the purported misconduct was not, as a matter of law, extreme and outrageous. Doc. 76 at 11. The Court agrees.

Aside from imprecisely arguing that several THC employees wanted Plaintiff out of his position and that Watabe's recording was unlawful, Plaintiff has presented no evidence from which a reasonable jury could find that the alleged conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Mintz*, 905 P.2d at 563; *see Anderson*, 477 U.S. at 248. Conduct "may be otherwise tortious, and even illegal, and not be outrageous." *Al-Asadi v. City of Phoenix*, No. CV-09-47-PHX-DGC, 2010 WL 3419728, at * 7 (D. Ariz. Aug. 27, 2010) (citing *Pankratz v. Willis*, 744 P.2d 1182, 1192 (Ariz. Ct. App. 1987)).

"'It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" *Mintz*, 905 P.2d at 563 (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988)). This is especially true considering the discretionary nature of THC's disciplinary policy, which gave it plenary authority to place employees on administrative leave. *See* Doc. 77-2 at 262.

**IT IS ORDERED:**

1. Plaintiff's motion in limine (Doc. 75) is **denied**.

2. Defendant's motion to dismiss and for summary judgment (Doc. 76) is **granted.**

3. The Clerk is directed to enter judgment and **terminate** this action.

Dated this 21st day of February, 2020.

David G. Campbell
Senior United States District Judge